UNITED STATED DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 15-002 |
| v. | * | SECTION: "A" (3) |
| | * | |
| KENNETH LEE | | |

\* * * *

### GOVERNMENT'S OPPOSITION TO DEFENDANT LEE'S MOTION FOR PRODUCTION OF *BRADY* MATERIAL AND FOR WRITTEN CONFIRMATION OF THE GOVERNMENT'S INSPECTION OF ALL LOCATIONS WHERE *BRADY* MATERIAL MAY EXIST

**NOW INTO COURT COMES** the United States of America, appearing herein through the undersigned Assistant United States Attorneys, to oppose parts of defendant Lee's Motion for Production of *Brady* Material and to oppose the request for Written Confirmation of Government's Inspection of All Locations Where *Brady* Material May Exist.

In seeking to have this Court order immediate production of a laundry list of claimed *Brady/Giglio* materials, the defense ignores the timetables for production relating to the Jencks Act under Title 18, United States Code, Section 3500, to the *Giglio* doctrine pursuant to *Giglio v. United States*, 404 U.S. 150 (1972) and to the *Brady* doctrine pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).  The government understands its obligations under the Jencks Act and the *Brady/Giglio* doctrines.  However, several of the defendant's requests are ambiguous, vague in their terms, and go beyond the dictates of the *Brady/Giglio* doctrines.

Immediate disclosure of *Giglio* material is not required.  Both *Giglio* and *Brady* material contained within *Jencks* materials are discoverable under the *Jencks* timetable.  In the Eastern District of Louisiana, the government normally provides that disclosure 48 hours prior to trial.

1

Not only does the defense attempt to blur the timetables and seek production beyond the *Brady/Giglio* requirements, but it also is attempting to judicially mandate a written confirmation from the government that it has searched those locations where "*Brady* material may exist" before the government is in compliance with the constitutional requirements of the *Brady/Giglio* doctrine. The government understands it duties under the *Brady/Giglio* doctrines but knows of no judicial mandate in this jurisdiction requiring a written certification that it has searched those areas "where *Brady* material may exist."

DEFENSE'S <em>BRADY/GIGLIO</em> REQUESTS

While the defense's overall *Brady/Giglio* notice is sufficient to assure that the government complies fully with its constitutional obligations, the defense goes well beyond the limits of the constitutional doctrines in certain specific requests. In request 2, the defense asks for "any prior inconsistent, non-corroborative or other witness statements which the witness' trial testimony will not reflect." While the government understands its obligation to disclose materially inconsistent statements, it does not agree that it is required to provide all "….non-corroborative or other witness statements which the witness' trial testimony will not reflect." The defense references a State of Louisiana court case but offers no federal jurisprudence. See Defense Memorandum, footnote 5.

Defense request 3, seeking "all the information indicating that the mental state of any government witness is below normal or in any way abnormal during the time periods in which the witness either perceived the events or testified about them" is unduly vague and calls upon the government to make psychiatric and psychological determinations about mental capacity not required by the *Giglio* doctrine. The defense cites no case law in support of this request.

2

Defense request 7, seeking "any information which tends to show a government witness' corruption, including anything in law enforcement officers' personnel files indicative of corruption," is also vague and ambiguous. Corruption is a term of art with many definitions. Disclosure of all witness corruption goes beyond the dictates of the *Brady/Giglio* doctrines. The defense provides no case law for this request.

In defense request 16, asking for "any law enforcement information of bias or profiling as to defendant Lee," the defense seeks: "any objectionable communications, including messages containing the following: profanity, hateful comments, spiteful comments, or pejorative language targeted at any group of citizens or any individual." Again, the request is vague, ill-defined, and beyond the dictates of the *Brady/Giglio* doctrines.

The government provides the following specific responses to the defendant's *Brady/Giglio* requests.

1. The government understands its *Giglio* obligations and will provide *Giglio* materials pursuant to the Jencks timetable under Title 18, United States Code, Section 3500. As stated, to accommodate the defense, the government will provide *Giglio* and *Jencks* materials 48 hours in advance of the trial. The *Giglio* doctrine does not require disclosure of docket numbers, dates and jurisdiction for all cases relating to any arrests or convictions. The request for all arrests is overly broad. The defense fails to qualify arrests as relating to untruthfulness or to place limitations on the age of the arrest or to acknowledge that the admissibility of the arrest is limited by Federal Rule of Evidence 608(b).

2. The government understands it obligations under the *Brady/Giglio* doctrines to provide all materially inconsistent statements by a government witness as it relates to his trial testimony. As previously urged, the request for "non-corroborative or other witness statements

which the witness' trial testimony will not reflect" is diffuse, overly broad, and not a proper *Giglio* request.

3.  The government understands its *Giglio* obligations to provide information of a mental condition of a government witness if that condition could impact credibility, memory, or the accuracy of the testimony. As previously stated, the request for any indication that the mental state of a government witness is below normal or in any way abnormal is overly broad and would require psychological expertise and/or testing, well beyond the dictates of the *Giglio doctrine*.

4.  The government understands its *Giglio* obligations to provide any information on any drug-induced impairment of a government witness if that condition could impact credibility, memory, or the accuracy of the witness' trial testimony.

5.  In pleadings filed with the defense, the government has acknowledged that Donald Sylvester ("Sylvester") cooperated with law enforcement during the course of the government's investigation of defendant Lee. Once he had the opportunity to speak directly with prison officials, Sylvester alerted the government of defendant Lee's overtures to kill Sylvester's former defense attorney and identified his telephone conversation with defendant Lee recorded by the prison telephone system where defendant Lee and Sylvester plotted the murder-for-hire.[1]

    (i.)  The government has provided this information, as stated above;

---

[1] The government has previously provided the defense with recordings of telephone conversations between Lee and Donald Sylvester plotting the murder-for-hire and between Lee and the undercover law enforcement officer plotting the murder-for-hire. The government has also provided the post-arrest mirandized-recorded statement of Lee where he acknowledges plotting the murder-for-hire with Sylvester and the undercover officer but claims that he never was going to do the murder, only rip-off Sylvester of his money. Sylvester's status as an informant has little or no bearing on whether Lee had the motive and intent to carry out the murder-for-hire.

4

   (ii.) Any possible prior cooperation by Sylvester on cases unrelated to defendant Lee's case is confidential, beyond the purviews of the *Giglio* doctrine, and could endanger Sylvester if he, in fact, had provided cooperation in other cases;

   (iii.) No non-monetary assistance has been provided to or promised to Sylvester as a result of his cooperation in the *Lee* case;

   (iv.) The government has not suggested to Sylvester that it would withhold benefits if he refused to cooperate in the *Lee* case;

   (v.) No assistance has been provided or promised to Sylvester in the *Lee* case. Any possible informant status relating to cases other than the *Lee* case is beyond the scope of the *Giglio doctrine;*

6. The government understands its *Giglio* obligations to disclose any benefits or promises of benefits to government witnesses under the *Jencks/Giglio* timetable. The fact that a witness may hope for a benefit not offered is beyond the scope of the *Giglio* doctrine. The defense provides no authority for this request;

7. The government understands its *Giglio* obligations. Requesting any information that "tends to show a government witness' corruption" is overly broad and beyond the scope of the *Giglio* doctrine;

8. False testimony under oath that comes within the scope of the *Giglio* doctrine will be provided. Any false statements unrelated to the *Lee* case will be collateral and admissibility will be determined pursuant to Federal Rule of Evidence 608(b);

9. The government will honor its *Giglio* obligations. Information about "bad acts" of a government witness is governed by Federal Rule of Evidence 608(b). Extrinsic evidence is not admissible to prove specific instances of a witness' conduct to attack his untruthfulness. It is

in the court's discretion whether to allow cross-examination on "bad acts" probative of untruthfulness;

10. The government will honor its *Giglio* obligations. A request for any prior false accusations by a government witness without limitation, however, is well beyond the scope of the *Giglio* doctrine;

11. The government will provide *Giglio* information relating to any government witness' bias against the defendant. The request for any past or present civilian complaints against a law enforcement officer that have not been sustained goes beyond the scope of the *Giglio* doctrine. Unsupported allegations of a third-party against a law enforcement officer do not constitute *Giglio* material;

12. The government understands its obligation to provide any "material" contradictions of a witness' testimony under the *Giglio* doctrine. The request is overly broad by not specifying "material" contradictions. If the government makes available to the defense an individual who materially contradicts a government witness' testimony, there is no obligation to provide the name and address of that person, especially if that individual does not want such disclosure;

13. The government will provide evidence of material inconsistencies in a government witness' testimony pursuant to the *Giglio* doctrine. The defense request as written, seeking "any failures by any witness to provide the police or the government with information testified to at trial" is overly broad and vague. For example, if a witness is not initially questioned about "material" matters that ultimately are included in that witness' trial testimony, there is no "failure" by the witness to provide information. What constitutes a "failure"?

14. The government will honor its *Giglio* doctrine obligations where a government witness provides materially inconsistent versions of the events relating to the trial evidence;.

15. The government will comply with it *Brady*/Giglio obligations as set forth above and will provide grand jury transcripts of government witnesses under the *Jencks* timetable;

16. As the defense is well aware based on previous discovery provided, there is no issue relating to bias or profiling by law enforcement in this case. The defense has been provided with the tape recordings of defendant Lee talking to Sylvester, an undercover law enforcement officer and to FBI agents who arrested him. In his Mirandized arrest statement, Lee acknowledged that he plotted the murder-for-hire with Sylvester. Lee further claimed that he never intended to go through with the murder but only was going to defraud Sylvester of his money. Profiling is not at issue here. Furthermore, request 16 is overly broad and well beyond the dictates of the *Brady/*Giglio doctrines. The claim that law enforcement profanity or pejorative language targeted at any individual would constitute *Brady* information in this case is not correct.

The defense claims without legal authority that it can compel this Court to order the government to provide a written confirmation that it has searched "every location in which *Brady* material may be found." As repeatedly stated, the government understands it *Brady/Giglio* obligations. But the government objects to the request for a written confirmation by the government that it has searched every location where *Brady* may be found. The defense's quixotic request for such a search confirmation has no precedence in this jurisdiction. Failure to disclose *Brady/Giglio* material is always at the prosecution's peril. The government understands that principal. The government also acknowledges the dictates of *Kyles v. Whitley*, 514 U.S. 419 (1995). No written confirmation should be ordered.

7

## **LAW**

*Giglio*, like *Brady*, is not a discovery tool that requires the government to disclose such information in the course of pretrial discovery. Rather, it is a rule of fairness and minimum prosecutorial obligation. Accordingly, the government should not be required to disclose *Giglio* information or Brady materials contained within witness statements prior to the Jencks Act timetable or the customary 48 hours prior to trial.

The government's *Giglio* duties are rooted in its *Brady* responsibilities, that is, to turn over exculpatory information to the defense. Under *Brady v. Maryland,* prosecutors have a duty to disclose evidence that is "favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment[.]" *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In *Giglio v. United States*, the Supreme Court extended its *Brady* jurisprudence to include evidence that would materially impeach a government witness, *e.g.,* by showing bias or interest. *Giglio v. United States,* 405 U.S. 150, 154 1972); *United States v. Bagley,* 473 U.S. 667, 676 (1985). However, *Brady* is not a discovery rule. As the Fifth Circuit has explained: "With respect to federal trials, even when it is applicable, *Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation." *United States v. Beasley*, 576 F.2d 626, 630 (5th Cir. 1978) (citing *United States v. Agurs*, 427 U.S. 97, 107 (1976). The Fifth Circuit has also "recognized both that *Brady* 'is not a pretrial remedy,' *United States v. Scott,* 524 F.2d 465, 467 (5th Cir.1975), and that *Brady* is not 'applicable at pre-trial stages.' *United States v. Frick,* 490 F.2d 666, 671 (5th Cir.1973), *cert. denied,* 419 U.S. 831, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974)." *United States v. Garrett*, 238 F.3d 293, 302 (5th Cir. 2000). The Fifth Circuit has therefore held that "the prosecutor's compliance with the Jencks Act provided timely disclosures under *Brady*." *United States v. Campagnuolo*, 592 F.2d 852, 860 (5th Cir. 1979) (citing cases). "The Fifth

Circuit has also held that there was no prejudice to the defendant when the government disclosed *Brady* information to the defendant during its case-in-chief" and also that "there is no violation of *Giglio* as long as the evidence is disclosed to the defense before the end of trial." In *United States v. Davis*, Crim. A. No. 01-282, 2003 WL 1825602, at *2 (E.D. La. Apr. 8, 2003), Judge Vance also provided cogent legal analysis supporting the disclosure of *Brady/Giglio* information under the Jencks Act timetable:

> Nor does the Court perceive any requirement that *Brady* or *Giglio* material be produced in pretrial discovery. Under *Brady v. Maryland*, prosecutors have a duty to disclose evidence that is both favorable to the defendant and material to either guilt or punishment. *See Brady*, 373 U.S. at 87. This includes evidence that would materially impeach a government witness, *e.g.*, by showing bias or interest. *See Giglio*, 405 U.S. at 154; *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375 (1985). The Fifth Circuit has stated, "*[] Brady* is not a discovery rule but a rule of fairness and minimum prosecutorial obligation." *United States v. Beasley*, 576 F.2d 626, 630 (5th Cir. 1978) (*citing United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392 (1976)). Therefore, *Brady* "is not a pretrial remedy." *See United States v. Garrett*, 238 F.3rd 293, 303 (5th Cir. 2000) (Fish. J.*, concurring)(quoting United States v. Scott*, 524 F.2d 465, 467 (5th Cir. 1975)). Rather, a *Brady* violation becomes a concern for courts only after trial, when courts are able to determine whether a non-disclosure deprived a defendant of a fair trial. *See id.* at 303-04 (*citing cases*). The Fifth Circuit has therefore held that "the prosecutor's compliance with the Jencks Act provided timely disclosure under *Brady*." *United States v. Campagnuolo*, 592 F.2d 852, 860 (5th Cir. 1979)(*citing cases*).

*See also United States v. Curious Goods, L.L.C. (06) et al, 2014 WL 345235 (W.D. La.)*(The government is not required to produce statements made by prospective government witnesses except as required by 18 U.S.C. § 3500 (the Jencks Act) even if the statements contain *Brady-Giglio* material. Fed.R.Cr.P. 16(a)(2)), (further citations omitted) at p.11.

The Jencks Act is codified at Title 18, United States Code, Section 3500. The Act provides for the discovery of statements made by government witnesses after the witness has testified on direct examination at trial. 18 U.S.C. § 3500. The Fifth Circuit has held, "The trial court cannot compel disclosure of Jencks material at any earlier point." *United States v.*

*McKenzie*, 768 F.2d 602, 609 (5th Cir. 1985) (citing *United States v. Gatto,* 533 F.2d 264, 265 (5th Cir. 1976)); *United States v. Edwards*, No. Crim. A. No. 03-153, 2003 WL 22204534, at *1 (E.D. La. Sept. 12, 2003) (Fallon, J.) (government is under no duty to produce Jencks statements until after a witness's direct testimony); *see also United States v. Neff*, 3:11-CR-0152-L, 2012 WL 6619385, at *2 (N.D. Tex. Dec. 18, 2012) (denying motion for early discovery of Jencks material because "[t]he government is required to disclose witness statements only *after* the witness's direct examination testimony.") (emphasis in original).  Indeed, the Fifth Circuit has invalidated a standing discovery order because it required early discovery of grand jury materials, in violation of the Jencks Act.  *Campagnuolo*, 592 F.2d at 861 (holding that the "district court's standing discovery order requiring earlier disclosure was invalid as to Aurillio's grand jury testimony, since the order was not mandated by *Brady* and was barred by the Jencks Act.") (footnote omitted).

The accepted custom in this District calls for the production of Jencks materials on the Friday before the Monday trial setting and nothing about this case justifies a departure from the customary practice of turning over the materials 48 hours prior to trial.  *See Edwards*, 2003 WL 22204534 at *1 (stating that "in this Circuit, the common practice is for the government to disclose testifying witness statements twenty-four (24) to forty-eight (48) hours before trial").

The "48 hour" rule has served the Eastern District of Louisiana well for many years, and there is no compelling reason to deviate from the established norm.  *See United States v. Mitchell*, Crim. A. No. 10-297, 2013 WL 5755627, at *2 (Oct. 23, 2013) (Wilkinson, M.J.) (declining to depart from district practice of 48-hour early Jencks disclosure, especially in light of allegations of murder and witness intimidation); *see also United States v. Impastato*, 535 F. Supp. 2d 732, 739 (E.D. La. 2008) (Duval, J.) (denying motion to order early Jencks Act

disclosure despite defense's allegations of "rampant inconsistencies" in government witness's statements, noting that such alleged inconsistencies are "simply part of any trial"); *United States v. Expose*, Crim. A. No. 06-92, 2007 WL 956584, at *2 (E.D. La. Mar. 28, 2007) (Barbier, J.) (refusing to order the government to disclose Jencks materials earlier than 48 hours prior to trial because "[t]he *Jencks* Act does not require earlier disclosure of witness statements.").

In *United States v. Aguilar*, 2007 WL 4219370 (N.D. Ca.), the defense requested information relating to an informant's cooperation in other cases beyond the case under indictment. The Court denied the request, providing the following analysis:

> The defense provides no explanation of how such a list would be material. Without some suggestion of materiality, the defendants' request is far too broad. See *United States v. Abonce-Barrera*, 257 F.3d 959, 969-70 (9th Cir. 2001) (No *Brady* violation where district court denied a request for a list of all the cases on which the informant had worked, where defendant did not show materiality of the prior cases); *United States v. Cutler*, 806 F.2d 933, 935 (9th Cir. 1986) (Per Curiam) (Detailed information about a previous unrelated investigation involving the informant could be withheld). This portion of the motion is denied.

*See also, United States v. Bararia*, 2013 WL 3353343 (D.C. Nev. 2013) (Defendant required to make specific showing of how informant's conduct in other cases was relevant and material to indicted case before production required of informant's other activities.)

The government asks that its responses to defendant's *Brady/Giglio* request be deemed sufficient, and that any disclosure of *Giglio* materials or *Brady* materials contained within witness statements be provided pursuant to the Jencks Act timetable or the customary 48 hours prior to trial.

                                        Respectfully submitted,

                                        KENNETH ALLEN POLITE, JR.
                                        UNITED STATES ATTORNEY

                                        /s/ Harry W. McSherry
                                        HARRY MCSHERRY (9388)
                                        Assistant United States Attorney

                                        /s/ Maurice E. Landrieu, Jr.
                                        MAURICE E. LANDRIEU, JR. (#22104)
                                        Assistant United States Attorney
                                        Deputy Chief, Criminal Division
                                        650 Poydras Street, Suite 1600
                                        New Orleans, Louisiana 70130
                                        Telephone No. (504) 680-3015
                                        maurice.landrieu@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on April 28, 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the following: Claude Kelly, Federal Public Defender, 500 Camp Street, New Orleans, LA,70130, counsel for Kenneth Lee hand delivery this 28th day of April 2015.

                                        /s/ Harry W. McSherry
                                        HARRY W. McSHERRY
                                        Assistant U.S. Attorney