UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 15-2 |
| KENNETH LEE | SECTION "A" (3) |

## ORDER

On May 6, 2015, Defendant's Motion to Compel Discovery [Doc. #22] and Defendant's Motion for Production of *Brady* Material and for Written Confirmation of Government's Inspection of All Locations Where *Brady* Material May Exist [Doc. #23] came on for oral hearing before the undersigned. Present were Claude Kelly and Ada Phleger on behalf of defendant and Bill McSherry and Maurice Landrieu on behalf of the government. After the oral hearing, the Court took the motions under advisement. Having reviewed the motions, the oppositions, and the case law, the Court rules as follows.

**I.     Background**

The indictment alleges that Lee did knowingly and intentionally use or cause to be used the mail and a cellular telephone with the intent that the murder of an individual be committed in violation of the laws of the State of Louisiana, that is, first- and second-degree murder, as consideration for the receipt of and as consideration for a promise or agreement to pay anything of

pecuniary value both before and after the murder was performed.

Specifically, and in short, the complaint alleges that Donald Sylvester, serving time at the Coleman Federal Correctional Institution for the murder of a federal witness, informed prison personnel that he had been approached by Lee. Sylvester informed the officials that Lee had acknowledged to him that he was willing to perform a murder-for-hire on Sylvester's former attorney. Lee also allegedly asked Sylvester if he wanted anyone else killed for having testified against him at his trial.

## II.     The Parties' Contentions

### A.     The Motion to Compel

Lee asks the Court to order the government to disclose all discovery related to him and to conduct an *in camera* inspection of the government's files to assure that it has provided all discovery. Specifically, he seeks (1) the letter sent by Donald Sylvester to AUSA Richard Westling advising him of the alleged plot; (2) all documents and objects in the possession of the Bureau of Prisons related to the alleged offense; (3) all data or reports extracted from the cell phone used by the undercover law enforcement officer; and (4) any audio recordings and/or telephone call logs related to Sylvester's participation in investigating and acting as an informant.

The government notes that it has been providing and will continue to provide evidence that it will use in its case-in-chief at trial. The government has informed Lee that there are other recordings located at the Bureau of Prisons of Lee speaking to other inmates and requesting that they get Sylvester to call him. The government will produce these recordings to defendants.

With regard to (1), the government will provide it 48 hours before trial if it constitutes Jencks Act, *Brady*, or *Giglio* material. With regard to (2), (3), and (4), the government notes that it will

produce all documents that it intends to use in its case-in-chief at trial. The government argues that despite this production, none of the documents is material to the preparation of the defense, *i.e.*, the information will not significantly alter the quantum of proof in defendant's favor. *United States v. Ross*, 511 F.2d 757, 762-62 (5th Cir. 1975).

The government maintains that there is no legal support for an *in camera* inspection of all government files.

### B. The Motion for Production

Lee asks the Court to compel the government to turn over all *Brady* material. He then lists 16 specific requests, some with discrete sub-parts. He notes that the Supreme Court has ordered prosecutors to err on the side of disclosure when deciding whether to produce material potentially covered by *Brady*.

Lee also asks the Court to order the government to provide written confirmation that it has conducted an affirmative investigation under *Brady* beyond the file of the prosecutor handling the case. Lee then lists nine individuals (and/or groups of individuals) and asks the government to consult each of them and review all of their relevant records.

The government consistently repeats that it is well aware of its obligations under *Brady*, *Giglio*, and the Jencks Act and will comply with said obligations. Responding to the specific requests, the government notes that it will produce any relevant documents the Friday (48 hours) before trial, as is customary in this district. The government argues that this procedure has served this district well over many years, and this case presents no reason to deviate from the standard procedure.

Citing to specific requests, the government maintains that the defense seeks documents well

beyond the limits of the constitutional doctrines, and some of the requests are vague and ambiguous. For example, it contends that the disclosure of all witness corruption is beyond the dictates of the doctrines as is evidence of law enforcement profiling or bias. It also argues that the disclosure of any evidence that the mental state of a government witness is below normal or abnormal requires it to render psychiatric and psychological determinations about mental capacity that is not required by the doctrines. It also contends that information related to an informant's cooperation in other cases is not discoverable under the case law. It further maintains that it will provide what material is covered by the doctrines. The government notes that neither *Brady* nor *Giglio* is a discovery tool, and the Fifth Circuit has held that the government can not be compelled to produce Jencks Act material before the witness has testified on direct examination at trial.

Lastly, it argues that there is no precedent in this jurisdiction to provide a written confirmation that it has searched every location in which *Brady* material may be found.

### III. Law and Analysis

Federal Rule of Criminal Procedure 16 provides that the government must disclose the defendant's oral statement; the defendant's written or recorded statement; and the defendant's prior record. Fed. R. Crim. P. 16(a)(1)(A)-(B), (D). The government must also allow the defendant to

> inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
> (i) the item is material to preparing the defense;
> (ii) the government intends to use the item in its case-in-chief at trial; or
> (iii) the item was obtained from or belongs to the defendant.

*Id.* 16(E). Moreover, the government must allow the defendant to inspect any physical or mental examination and any scientific test or experiment under certain conditions. *Id.* 16(F). And lastly, the government must produce to the defendant a written summary of any expert testimony that it

intends to use in its case-in-chief at trial. *Id.* 16(G).

Rule 16 also provides that certain information is not subject to disclosure:

> **Information Not Subject to Disclosure.** Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

*Id.* 16(a)(2).

With regard to the letter from Sylvester to Westling, the motion is moot as the District Court has reviewed the letter *in camera* and ordered its production. [Doc. #50]. The government maintains that it will produce to defendant all documents and objects in the possession of the Bureau of Prisons related to the alleged offense, all data or reports extracted from the cell phone used by the undercover law enforcement officer, and any audio recordings and/or telephone call logs related to Sylvester's participation in investigating and acting as an informant that it intends to use in its case-in-chief at trial.[1] This is all that is required under the rules. Fed. R. Civ. P. 16(E)(ii). The Court orders the government to produce said material to Lee as soon as it determines that it will use it in its case-in-chief at trial. Further, the Court has found no authority for an *in camera* inspection of the government's files.

As to the second motion, *Brady* material is any information in the possession of the government that relates to guilt or punishment and that tends to help the defense by either bolstering the defense case or impeaching potential prosecution witnesses. *Brady v. Maryland*, 373 U.S. 83,

---

[1] The District Court has also ordered the government to review the latter recordings and produce any *Brady* or Rule 16 material. [Doc. #50].

87 (1963). This includes *Giglio* evidence that would materially impeach a government witness, *e.g.,* by showing bias or interest. *See Giglio v. United States*, 405 U.S. 150, 154 (1972); *United States v. Bagley*, 473 U.S. 667, 676 (1985). The government generally has no obligation to turn over any exculpatory material of which the defense is already aware. *See Lovitt v. True*, 403 F.3d 171, 185 (4th Cir. 2005) ("*Brady* only applies when evidence is known to the prosecution but unknown to the defense") (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)). Furthermore, the government has no obligation if the information is available to the defendant through the exercise of diligence. *See United States v. Willis*, 277 F.3d 1026, 1034 (8th Cir. 2002); *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997) ("State has no obligation to point the defense toward potentially exculpatory evidence when that evidence is either in the possession of the defendant or can be discovered by exercising due diligence."); *United States v. Serfling*, 504 F.3d 672, 678-79 (7th Cir. 2007) (no *Brady* violation when government made documents available for defendant's review).

In addition, there is no requirement that *Brady* or *Giglio* material be produced in pre-trial discovery. *United States v. Davis*, Co. Cr. A. 01-282, 2003 WL 1825602, *2 (E.D. La. Apr. 8, 2003). The Fifth Circuit has stated, "[ ] *Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation." *United States v. Beasley*, 576 F.2d 626, 630 (5th Cir. 1978) (citing *United States v. Agurs*, 427 U.S. 97, 107 (1976)). Therefore, *Brady* "is not a pretrial remedy." *See United States v. Garrett*, 238 F.3d 293, 303 (5th Cir. 2000) (Fish, J., concurring) (quoting *United States v. Scott*, 524 F.2d 465, 467 (5th Cir. 1975)). Rather, a *Brady* violation becomes a concern for courts only after trial, when courts are able to determine whether a non-disclosure deprived a defendant of a fair trial. *See id.* at 303-04 (citing cases). The Fifth Circuit has therefore held that a "prosecutor's compliance with the Jencks Act provided timely disclosures under

*Brady.*" *United States v. Campagnuolo*, 592 F.2d 852, 860 (5th Cir. 1979) (citing cases).  The Fifth Circuit has also held that there was no prejudice to the defendant when the government disclosed *Brady* information to the defendant during its case-in-chief. *See United States v. Neal*, 27 F.3d 1035, 1050 (5th Cir. 1994).  Lastly, the Fifth Circuit has held that there is no violation of *Giglio* as long as the evidence is disclosed to the defense before the end of trial.  *See Hill v. Black*, 887 F.2d 513, 517 (5th Cir. 1989), *vacated on other grounds by* 198 U.S. 801 (1990); *see also United States v. Martinez-Perez*, 941 F.2d 295, 301 (5th Cir. 1991) (reaffirming the *Giglio* aspect of *Hill*).  Thus, if the government produces *Brady* material to defendant as it receives such material, no violation of *Brady* occurs.

The situation here is one of timing, not of suppression. Defendants have made no showing of prejudice of a substantial due process character in this case. The government indicates that it is aware of its *Brady* and *Giglio* obligations. It states that, while not legally required, it has provided defendants with *Brady* material – and will continue to do so – as it sifts through the information before it.  As noted, the government will provide defendants with all *Brady* and *Giglio* material no later than 5:00 p.m. on the Friday before trial, as is the practice in this circuit.  Nothing more is required.  Defendants have not provided this Court with a viable legal justification for ordering the pre-trial discovery of the materials in question.

The government is aware of its *Brady* and *Giglio* obligations and will produce to Lee all such material on the Friday (48 hours) before trial.  That is the policy in this circuit, and – while Lee maintains otherwise – this Court sees no reason to deviate from it in this criminal case.  As the District Court has done, the Court directs the government to err on the side of caution: Any material *arguably* covered by *Brady* shall be produced to Lee. The Court concludes that the government –

given this direction – is fully capable of sifting through Lee's requests to determine whether any such requests seek *Brady* material.

However, with regard to some of the specific requests, the Court finds that Lee seeks documents well beyond the limits of the constitutional doctrines. For example, the Court has found no authority – and Lee has cited it to none – for the disclosure of all witness corruption or any evidence of law enforcement profiling or bias. And the disclosure of any evidence that the mental state of a government witness is below normal or abnormal would require the government to render psychiatric and psychological determinations about mental capacity that is not required by the doctrines. Further, any information related to an informant's cooperation in other cases is not discoverable under the case law without a specific showing of materiality. *United States v. Aguilar*, No. CR 07-0030, 2007 WL 4219370 (N.D. Cal. Nov. 28, 2007). And Lee has made no such showing here.

And lastly, this Court has found no precedent in this circuit for ordering the government to produce a written confirmation that it has interviewed every person and/or searched every location for exculpatory material.

**IV.   Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion to Compel Discovery [Doc. #22] and Defendant's Motion for Production of *Brady* Material and for Written Confirmation of Government's Inspection of All Locations Where *Brady* Material May Exist [Doc. #23] are GRANTED IN PART, DENIED IN PART, and DISMISSED AS MOOT IN PART as outlined above.

New Orleans, Louisiana, this 29th day of May, 2015.

_____
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**